GATTMAN & CO. *v.* ACKER.

**Agency.**

A purchaser of four bales of cotton in his own name, though payment be made therefor with money borrowed of a bank, is not an agent of the bank.[1]

**Pledge.**

There must be a delivery of an article to constitute a pledge of same.

In September, 1884, F. G. Henley purchased of John T. Franklin four bales of cotton, giving him a check therefor, drawn on Gattman & Co., bankers, of Aberdeen, Miss. Henley went to the bank and asked them to pay the check and he would let them hold the cotton as security, but the warehouse receipts were not delivered up until some days later. J. M. Acker, appellee, held a judgment against F. G. Henley for $182.16, rendered June 4, 1884, and on the date of Henley's purchase of the cotton from Franklin an execution was levied on the same as the property of F. G. Henley. Gattman & Co. promptly filed a claimant's issue and replevied the cotton, giving bond therefor. On the trial of the cause in the court below, judgment was rendered for plaintiff in the sum of $211.50, the value of the cotton. From this judgment claimant appeals.

APPEALED from Circuit Court, Monroe county, J. W. BUCHANAN, Judge.

Affirmed, January 19, 1885.

---

1

The statute referred to in this case is in the following words: "If a person shall transact business as a trader, or otherwise, with the addition of the words 'agent,' 'factor' 'and company' or 'and Co.' or like words, and fail to disclose the name of his principal or partner by a sign in letters easy to be read, placed conspicuously at the house , where such business is transacted, or if any person shall transact business in his own name without any such addition, all the property, stock, money, and choses in action, used or acquired in such business, shall, as to creditors of any such person be liable for his debts, and be, in all respects, treated in favor of his creditors, as his property." Code 1880, § 1300; Code 1892, § 4234.

Both possession and good faith of the parties are essential to a valid pledge. First National Bank *v.* Caperton, 74 Miss. 857, 22 So. 60; Caperton *v.* McCormick, Id.

A pledgor of a note retains an equitable interest therein. Baker *v.* Burkett, 75 Miss. 89, 21 So. 970.

*Attorneys for appellants, Houston & Reynolds.*

*Attorneys for appellee, Sykes & Bristow.*

Brief of Houston & Reynolds:

There was no sign of " factor," " agent," " company," or " Co." The business was transacted by Henley in his own name without any such addition. The statute, section 1300 of Code, in such cases, makes all the property " used or acquired " in the business liable for all the debts of the party conducting the business. * * *

The property must be " used or acquired " in the business before it becomes liable. It must be such use or acquisition as gives the party credit on the faith of the ostensible ownership. The statute was never intended to apply to the purchase of property with the money of another and for that other, and when the property was not so used or acquired, as to mislead others or induce credit.

The statute does not apply to property placed in the hands of an agent to be sold for the owner and the proceeds to be at once handed over to him. The property in such a case is not so " used or acquired " as to make it liable. Shannon *v.* Blum & Co., 60 Miss. 828.

The same reason leads to the conclusion that the statute does not apply where money is placed in the hands of an agent to buy property, and the property to be immediately delivered to the principal.

The object of the statute, and it is a wise one when construed according to its purpose and intention, " was to prevent the assertion of secret claims to property as against the creditors of the person who seems to be the owner of it, evidenced by his dealings with it." In the case of a cotton buyer who purchases with the money of another and delivers the cotton over to the owner immediately, there is nothing which evidences an ownership.

Henley had no " sign." There was a cotton sample suspended by a line. It was contended in the Circuit Court that because there was no sign disclosing Gattman & Co. as the principal, that the cotton bought by Henley was liable for his debts.

This court knows — it is a part of the business history of the State with which we are all familiar — that in every town and

depot in this State there are cotton buyers who are purchasing as agents of eastern, southern, and foreign spinners. At one time a lot of cotton will be purchased for a manufacturer in Lowell; the same day another lot will be purchased for a Manchester spinner, and another lot for the Wesson mills. These purchases are made by one person but for different principals. The theory of appellee is that this agent, in the place where he transacts this business, must disclose by a sign "in letters easy to be read, placed conspicuously in the house where the business is transacted," the name of his principal, or otherwise the property "used or acquired" will be liable for the debts of the agent, or rather that the cotton bought will be so liable. If this is a correct construction of the statute, every cotton buyer purchasing for the account of others must have a sign painter at his command and before he completes a purchase for Baring must have a new sign painted, "easy to be read and conspicuously posted," disclosing that he is now purchasing for Baring. The next lot is to be purchased for Butler, but before he makes it, he must haul down his Baring sign and have a new one painted "easy to be," etc., disclosing a purchase for Butler. How many signs each cotton buyer would have on hand at the close of a season, and how many sign painters he would require to make the needed presto change, there is no estimating.    *    *    *

Take the case of Sholfield v. Wilkins, 60 Miss. 238. Wilkins was conducting the business as agent for his wife, salesman and manager. There was no sign. There may have been, doubtless was, hanging in front the usual display as an indication of what was done or sold within. The creditors of Wilkins sought to subject the property to the payment of their debts. This court held that the property is not liable, and in commenting upon the effort of counsel to bring this case under section 1300, say: "This is a total misconception of the statute."

If Wilkins could buy and sell for his wife and the property with which he was dealing would not be liable for his debts, so, if Henley, without any sign, buys cotton for Gattman & Co., the cotton is not liable for Henley's debts. "This is a misconception of the statute to so contend."

There is a dictum in Gumbel v. Koon, 58 Miss. 267, which has led to a very erroneous construction by the inferior courts of section 1300. We allude to the concluding sentence of the opinion:

" And it (the sign) conclusively fixes the ownership to be in the party whose sign is exhibited at the place where the business is conducted, or who, in the absence of any sign, is the manager of the business."

Schoolfield *v.* Wilkins, 60 Miss. 238, limited and explained the language of the court in the concluding clause, and established that where there was no sign, the property was not liable for the debts of the manager who was agent of the owner.

The other clause has been construed to render a stock of merchandise which was owned by A., liable to the debts of B., because B.'s sign was over the door, an old sign which had been there for years. While we do not doubt that these constructions do violence to the language of this court, we call it to its attention, that the language may be modified so as to express the views of the court.

There is nothing in the statute where business is conducted and owned by a different person to make the property used or acquired in the business liable for the debts of a party whose sign is over the door, the sign being in a different name from the real owner. Yet the courts say " that the sign exhibited conclusively fixes the ownership."

This case was decided by the Circuit Court on the last clause of the opinion, that the property is liable for debts of the party who manages the business in the absence of a sign.

We submit these matters for the consideration of this court, and that its language in the case cited may be so modified as to express its conclusions as intended.

Brief of Sykes & Bristow:

To state this case is, in our opinion, to decide it. We cannot conceive of a case coming more strictly within the letter and the spirit of the statute. Compare the facts of this case with the last paragraph of section 1300 of the Code. The court will perceive that the " sign " provision is eliminated from this paragraph, the lawmakers assuming, of course, that if a person " transacts business *in his own name,* it *could* not be that he had any sign out indicating that he was *not* transacting business *in his own name.* The two things are utterly incompatible.

As Henley had *no* sign out at all, except a bunch of cotton hanging before the door of Elkin's drug store, it is unnecessary to in-

voke the provisions of the first clause of section 1300, relative to disclosing by sign the name of his "principal or partner." He does not *assume* to be doing business as "agent" or "factor" or anything of the sort. He does business "without any such addition."    *    *    *

Henley's business was cotton buying in his own name. The sole question remaining is, was the property here in controversy "acquired in such business?" There is no doubt of it. Rogers recommended Franklin to go to Henley as a regular cotton buyer. Franklin went to him as such, and sold to him the cotton as such, receiving his check on Gattman & Co., bankers, therefor. Henley says Franklin came to him to sell, and offered the cotton at a reasonable price; he thought he could make some money out of the trade, and bought it. To argue that this was an "acquiring" of the cotton in the "usual course of Henley's business" is superfluous. It is too plain for argument.

The cotton then was bought by Henley, and was in his possession (in contemplation of law, he holding the warehouse receipts), when the execution was levied on it. We submit that it was subject to levy and sale as Henley's property.

Leaving out of Gumbel *v.* Koon, 59 Miss. 264, the so-called "dictum" that appellant's counsel speaks of, we submit that the *decision* in that case is conclusive of this case. The two cases are exactly the same, except that in Gumbel *v.* Koon, Buffington was buying for one particular principal, and Henley was buying for himself. (We presume to sell again, as he speaks of being able to make some money out of the trade owing to the low price at which he bought.) This makes this case much stronger than Gumbel *v.* Koon, and one in which the *reason* of the law would apply with much greater force. Where one person is buying cotton for *another particular person exclusively* and shipping to him, it might be supposed that the public would soon find it out without making any sign to that effect, and there would be small danger of any one's being victimized.

But when a party, like Henley, is buying, not for any other, but simply in his own name, and on his own account to speculate on — to allow him to set up — when property acquired in that business is sought to be subjected to his debts, that, though generally buying for himself, in that particular purchase he acted as the secret agent of another, would be to allow him to perpetrate a swindle on creditors.

Section 1300 of the Code was enacted to prevent just such swindles, and this court in Gumbel *v.* Koon declined to engraft any exceptions on the statute on the ground of its alleged hardship. * * *

If the doctrine of Ketchum *v.* Brennan, 53 Miss. 596, could be applied to the case where A. purchases from B., and agrees with C. that the property is to be C.'s until the money advanced by C. is repaid — then it would be covered by the statute, section 1300, for this is a clear case of a purchase by A. as agent of C., without disclosing his agency — that is, assuming all the time that A. is engaged in the business of such purchases.

* * * It is not true that there are cotton buyers in every town in the State purchasing as agents of eastern, southern, and foreign spinners. We doubt whether there is one in the South. The court seemed to doubt it in Gumbel *v.* Koon. Eastern, southern, and foreign spinners do not keep agents in the cotton belt buying for them on commission or on salary. It would not pay. Cotton buyers in our country carry on a regular business; they buy to sell again at a profit. * * *

But even if the cotton buyer were acting as the agent of certain specified spinners, we see no difficulty in applying the statute. He can readily disclose by a sign for whom he is buying. But counsel supposes the case of a buyer who holds himself out to buy for *anybody* on commission or otherwise, and asks how he is to disclose by sign the parties for whom and with whose money he buys each bale of cotton. We reply that in that case he would be a *factor*. Story on Agency, § 33, note 2.

And this court has held that the statute does not apply to *factors*. Shannon *v.* Bluhm, 60 Miss. 831. * * *

In Schoolfield *v.* Wilkins, 60 Miss. 238, the wife "was doing business as a merchant *with her own means and in her own name*" without any sign at all, and we have always wondered at the attempt in that case to apply the statute of section 1300. That it did not apply in such a case is too clear for argument. If Gattman & Co. in this case had been carrying on the business of cotton buying with their own means and in their own name, and Henley, like Wilkins, had been acting as their *clerk* or *agent,* clearly the cotton acquired by Henley for them would not be liable for his debts. But there is no pretense here that Henley was not carrying on the business in his own name, or that Gattman had

anything to do with the business except to advance the money to the buyer on good security. * * *

OPINION.—COOPER, J., delivered the opinion of the court:

The facts in this record do not disclose a case of purchase by Henley as the agent of Gattman & Co. The purchase was by Henley for himself, the money paid was for his account, and he was and is liable to pay the same as a debt to Gattman & Co.

The evidence shows only an unexecuted agreement that Gattman & Co. should have a pledge of the cotton to secure the payment of the money advanced. There was no delivery of the cotton, and, therefore, no pledge.

The judgment is *affirmed*.